USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___8/30/2017___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

 ADRIAN NAJERA QUIROZ and
SERGIO CASTILLO HUERTA,

                                        Plaintiffs,                    **ORDER**

                    -against-                                          **1:16-cv-07077 (KHP)**

NYC BUILDING MANAGEMENT LLC (d/b/a
NYC BUILDING MANAGEMENT) and IVAN
SUN,

                                        Defendants.

----------------------------------------------------------------X

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

        This matter is before me on the parties' joint application to approve the parties'

settlement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015),

*cert. denied*, 136 S. Ct. 824 (2016), to the extent it waives claims under the Fair Labor Standards

Act, 29 U.S.C. § 201 *et seq*. ("FLSA").

        I.       **Facts**

        Defendants own and operate various residential buildings in Manhattan. Plaintiff Adrian

Najera Quiroz worked as a handyman for Defendants. Plaintiff Sergio Castillo Huerta worked as

a superintendent for Defendants.

        Plaintiffs allege that they regularly worked in excess of forty hours per week and were

paid a fixed weekly wage that did not properly compensate them for overtime in violation of

the FLSA and New York Labor Law §§ 190 *et seq*. ("NYLL"). They also contend that Defendants

failed to comply with New York Labor Law spread of hour regulations. N.Y. Comp. Codes R &

Regs. tit. 12, § 146-1.6. Plaintiff Najera asserted that he was owed $59,000 in unpaid wages/overtime. Plaintiff Castillo asserted that he was owed $62,000 in unpaid wages/overtime.

Defendants denied Plaintiffs' allegations and asserted a number of defenses. Defendants claimed Plaintiff Castillo was exempt from overtime pay under New York Labor Law pursuant to an exemption for janitors, citing N.Y. Comp. Codes R. & Regs. tit. 12, § 141-3.4. They also vigorously disputed the amount of hours Plaintiff Castillo claimed he worked, pointing to his regular schedule, which reflected far fewer hours worked than he alleged. Defendants contend that Plaintiff Najera was not employed for the period of time that he claimed and also strongly disputed the quantity of hours he claimed he worked. Finally, with respect to both Plaintiffs, Defendants argued that they did not have to pay spread of hours pay to either Plaintiff because the wage order requiring such pay is not applicable to building service workers. *Compare id*. § 146-1.6 (Hospitality Wage Order) *with id*. § 142-2.4 (Miscellaneous Industries and Occupations Wage Order). Based on these defenses, Defendants contend that Plaintiff Castillo was owed nothing and that Plaintiff Najera, at most, was owed $9,000 crediting his alleged overtime hours for the period of time he actually was employed by Defendants.

After exchanging information relevant to Plaintiffs' employment, pay, and hours worked, the parties began discussing settlement, including during a telephonic conference and a lengthy in-person settlement conference with this Court.

## II.     Settlement Terms

Under the terms of the settlement, Defendants will pay a settlement in the total gross sum of $90,000 to settle all claims raised or that could have been raised in the Complaint,

including those arising under the FLSA. Plaintiff Najera will receive $27,000 and Plaintiff Castillo

will receive $33,000. Plaintiffs' counsel will receive the remaining $30,000 in respect of

attorneys' fees and costs.

The settlement agreement provides for a release of all claims by the settling Plaintiffs

that were or could have been brought relating specifically to the Complaint in this action. It also

contains a mutual non-disparagement provision that explicitly permits Plaintiffs to discuss the

facts underlying this Action.

### III.     Approval of the FLSA Settlement

The FLSA sets forth the minimum wage and overtime that an employee must be paid, as

well as specific exemptions from its requirements. The U.S. Supreme Court recognized that the

statute was designed to protect "certain groups of the population from substandard wages and

excessive hours which endangered the national health and well-being." *Brooklyn Sav. Bank v.

O'Neil*, 324 U.S. 697, 706 (1945). Since then, courts have recognized the unique policy

considerations underlying the FLSA and the importance of deterring employers from exerting

undue pressure on low wage employees to compromise valid wage claims. Citing these

concerns, the Second Circuit has held that settlements of FLSA claims in which the parties

terminate the action via a stipulation of dismissal pursuant to Rule 41 require approval of the

district court or the U.S. Department of Labor to take effect. *Cheeks*, 796 F.3d at 206.

Court approval of an FLSA settlement is appropriate "when [the settlement] [is] reached

as a result of contested litigation to resolve *bona fide* disputes." *Johnson v. Brennan*, No. 10-cv-

4712 (CM), 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement

reflects a reasonable compromise over contested issues, the court should approve the

settlement." *Id.* (citations omitted); *see also Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (parties must demonstrate settlement is "fair and reasonable").

There are five factors relevant to an assessment of the fairness of an FLSA settlement including: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Medley v. Am. Cancer Soc.*, No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010) (other citations omitted)). The settlement here satisfies these criteria.

First, the settlement represents a fair compromise about the settling Plaintiffs' hours. Though Najera and Castillo calculated their maximum recovery for lost wages as $59,000 and $62,000, both faced a significant risk of recovering nothing or substantially less given the legal and factual defenses raised by Defendants.

With respect to the second and third factors, the settlement will entirely avoid the burden, risks, expense, and aggravation of continued litigation. Given the factual disputes over the settling Plaintiffs' hours worked, duties, and applicability of exemptions, the parties faced the costs and uncertainties of a jury trial. These costs and risks are fully avoided by settlement.

Fourth, because the parties reached settlement after protracted negotiations supervised by me, it is clear the settlement is the product of arm's-length bargaining. Fifth, there are no factors here that suggest the existence of fraud.

The settlement agreement's terms are consistent with terms approved by courts in the Second Circuit. *See, e.g., Santos v. Yellowstone Props., Inc.*, No. 15-cv-3986 (PAE), 2016 WL 2757427, at *1, 3 (S.D.N.Y. May 10, 2016); *Hyun v. Ippudo USA Holdings*, No. 14-cv-8706 (AJN), 2016 WL 1222347, at *3-4 (S.D.N.Y. Mar. 24, 2016); *Souza v. 65 St. Marks Bistro*, No. 15-cv-327 (JLC), 2015 WL 7271747, at *5-7 (S.D.N.Y. Nov. 6, 2015).

Finally, the settlement agreement provides that one-third of the settlement fund will be paid to Plaintiffs' counsel as a contingency fee and costs. Contingency fees of one-third in FLSA cases are routinely approved in this Circuit. *See Santos v. EL Tepeyac Butcher Shop Inc.*, No. 15-cv-814 (RA), 2015 WL 9077172, at *3 (S.D.N.Y. Dec. 15, 2015) (citing *Thornhill v. CVS Pharm., Inc.*, No. 13-cv- 507 (JMF), 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014)); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13-cv-3234 (LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013); *Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012); *Palacio v. E\*TRADE Fin. Corp.*, No. 10-cv-4030 (LAP) (DCF), 2012 WL 2384419, at *6-7 (S.D.N.Y. June 22, 2012).

In assessing the reasonableness of the proposed attorneys' fee allocation, the Court also considers the "lodestar" amount, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Stancyzk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014). Lead counsel in the Southern District of New York typically charge between $300 and $400 per hour in wage-and-hour cases, but courts in this district have approved hourly rates as high as $450. *See Rodriguez-Hernandez v. K Bread & Co., Inc.,* No. 15-cv-6848 (KBF), 2017 WL 2266874, at *6 (S.D.N.Y. May 23, 2017) (collecting cases). Here, Plaintiffs' counsel's lodestar amount computes to only $12,190. However, in light of counsel's experience

litigating these cases and the good result obtained for Plaintiffs, it is this Court's view that

Plaintiffs' counsel should not be penalized for settling this action early and efficiently.

Accordingly, this Court finds the amount allocated to attorneys' fees is reasonable.

**IV.     Conclusion**

For all the reasons set forth above, this Court approves the settlement in this matter.

Accordingly, the Plaintiffs' claims are dismissed with prejudice and without costs.  The Clerk is

directed to docket the Stipulation of Dismissal filed at Docket No. 37 and close this action.

**SO ORDERED.**

Dated: August 30, 2017
       New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge